UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOSEPH TRANCHINA,

                                     **Plaintiff,**

   vs.                                                      9:17-CV-1256
                                                                   (MAD/ML)

C.O. JUSTIN MCGRATH, *Bare Hill Correctional Facility, formerly known as Jeremy McGrath*, and SGT. MATTHEW BARNABY, *Bare Hill Correctional Facility, also known as "John" Barnaby*,

                                       **Defendants.**

---

**APPEARANCES:**

**SIVIN, MILLER LAW FIRM**
20 Vesey Street
Suite 1400
New York, New York 10007
Attorneys for Plaintiff

**LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC**
32 Old Slip, 8th Floor
New York, New York 10005
Attorneys for Plaintiff

**LIPPES, MATHIAS, WEXLER & FRIEDMAN, LLP**
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Attorneys for Defendant McGrath

**OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant Barnaby

**OF COUNSEL:**

**DAVID ROCHE, ESQ.**
**EDWARD SIVIN, ESQ.**
**ANDREW WEISS, ESQ.**
**GLENN D. MILLER, ESQ.**

**MOSES M. AHN, ESQ.**

**VINCENT M. MIRANDA, ESQ.**
**BENJAMIN F. MACALUSO, ESQ.**
**JAMES PETER BLENK, ESQ.**

**MATTHEW P. REED, AAG**
**RYAN L. ABEL, AAG**

**Mae A. D'Agostino, U.S. District Judge:**

1

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff commenced this action on November 15, 2017, pursuant to 42 U.S.C. § 1983, over incidents that occurred at Bare Hill Correctional Facility ("Bare Hill C.F.") while Plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See* Dkt. No. 1. In his amended complaint, Plaintiff asserted six causes of action: (1) infliction of cruel and unusual punishment in violation of the Eighth Amendment; (2) denial of substantive due process in violation of the Fourteenth Amendment; (3) First Amendment retaliation against Defendant McGrath; (4) state law battery against Defendants; (5) state law intentional infliction of emotional distress; and (6) state law intentional and malicious action. *See* Dkt. No. 5. Following a motion for summary judgment, Plaintiff's only remaining claims are his Eighth Amendment excessive force claim against Defendant McGrath and his Eighth Amendment excessive force and failure to intervene claims against Defendant Barnaby. *See* Dkt. No. 67 at 9, 12. Following a four-day trial, a jury found in Plaintiff's favor on the excessive force claim as against Defendant McGrath. *See* Dkt. No. 131. The jury returned a no cause verdict as to Defendant Barnaby. *See id.*

Presently before the Court is Defendant McGrath's renewed motion for judgment as a matter of law or, in the alternative, for a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure. *See* Dkt. No. 159. For the following reasons, Defendant McGrath's motion is denied.

**II. BACKGROUND**

The evidence at trial showed that in the morning of January 28, 2016, Plaintiff was stopped by Defendant McGrath while Plaintiff made his way to his regularly scheduled classes in

2

the annex school building. *See* Dkt. No. 166 at 15, 20. The incident took place in the vestibule area outside of the annex school. The vestibule area refers to the space between the exterior door and the interior door to the annex school. *See id.* at 13-14. The vestibule area was described as a small rectangular room made of cinderblock walls, two metal doors on either end, and a radiator along the side of the wall. *See id.* at 14.

Defendant McGrath stopped Plaintiff to conduct a pat frisk. *See id.* at 20. At trial, Plaintiff testified that during the pat frisk, Defendant McGrath asked Plaintiff about what was going on in F2, referring to Plaintiff's assigned dormitory, and called Plaintiff a "hotshot." *See id.* at 22. Defendant McGrath then asked Plaintiff why he was carrying a weapon. *See id.* Plaintiff denies ever carrying a weapon during his incarceration. *See id.* at 23-24. After frisking Plaintiff's ankle area, Defendant McGrath pulled Plaintiff's ankles out from under him, causing him to fall to the floor and hit the side of his body against the radiator during his fall. *See id.* at 24, 107. Plaintiff testified that while he was on the ground, Defendant McGrath climbed onto his back and began hitting him repeatedly on the side of his head and ribs until he almost lost consciousness. *See id.* Plaintiff testified that a few minutes after Defendant McGrath assaulted him, Defendant Barnaby entered the vestibule area and kicked him in the face and groin. *See id.* at 27, 96.

Defendant McGrath testified that during a routine pat frisk for contraband, he detected a foreign object around Plaintiff's ankle area. *See id.* at 224-25. When Defendant McGrath asked Plaintiff what the object was, Defendant McGrath claims that Plaintiff turned and struck him in the face with his right elbow. *See id.* Defendant McGrath testified that he used only the amount of force necessary to subdue Plaintiff until back-up arrived. *See id.* at 224-28.

Immediately following the incident, Plaintiff was transported by van to the special housing unit ("SHU"). *See id.* at 31. While being processed at the SHU, Plaintiff testified that he was

3

"grabbed" and "slapped around a little bit." *See id.* at 33. Plaintiff was evaluated by a nurse who noted several injuries. *See id.* at 139, 145. Soon thereafter, Plaintiff was sent to Franklin Correctional Facility to receive treatment and an x-ray. *See id.* at 166. The x-ray revealed that Plaintiff suffered a fractured right distal tenth rib. *See id.* at 126.

Following the incident, investigators interviewed Plaintiff and informed him that Defendant McGrath reported that Plaintiff had been carrying a plexiglass shank on January 28, 2016. *See id.* at 43. Plaintiff denied ever carrying a weapon and requested that the investigators take his DNA and perform a comparison with the weapon. *See id.* at 44. A DNA sample was taken and the results indicated that Plaintiff was not a major contributor. *See id.* at 44; Dkt. No. 167 at 379-80. A tier hearing was conducted and, based on Defendant McGrath's testimony that Plaintiff had come off the wall during the pat frisk and was carrying a weapon, Plaintiff was sentenced to 210 days in solitary confinement and was subsequently transferred to Attica Correctional Facility. *See* Dkt. No. 166 at 47-48, 50. Following an investigation into the January 28, 2016 incident, Plaintiff was vindicated, transferred back to a medium security facility, and Defendant McGrath's employment was terminated. *See id.* at 52, 162-64.

At trial, Plaintiff submitted evidence which suggested that the Defendant McGrath assaulted Plaintiff after learning that Plaintiff had been flirting with a female corrections officer who Defendant McGrath was dating. *See id.* at 5-9. At the time of trial, Defendant McGrath and the female corrections officer were still engaged in a romantic relationship. *See id.* at 177-78. Defendant McGrath testified that he was not dating the officer at the time, was not familiar with the extent of the interactions between Plaintiff and the female corrections officer, and was not aware of Plaintiff's identity on January 28, 2016. *See id.* at 174-76, 178-81.

### III. DISCUSSION

A. **Motion for Judgment as a Matter of Law**

*1. Legal Standard*

A Rule 50 motion for judgment as a matter of law may only be granted where the evidence, viewed in the light most favorable to the nonmoving party, "'is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038-39 (2d Cir. 1992) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970)) (other citation omitted). A judgment will only be set aside if there was "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997) (quotation omitted). A district court may only consider issues in a renewed Rule 50 motion that were raised in a motion for directed verdict prior to judgment being decided in the case. *Cruz v. Local Union No. 3 of the Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir. 1994).

*2. Proximate Cause of Plaintiff's Injuries*

Defendant McGrath argues that he is entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claim because Plaintiff failed to put forward credible evidence to establish that Defendant McGrath's use of force was the proximate cause of Plaintiff's injuries. *See* Dkt. No. 159-1 at 9. In support of this argument, Defendant McGrath points to Plaintiff's testimony that he experienced a series of physical altercations with unidentified corrections officers after he was separated from Defendant McGrath. *See id.* Specifically, Defendant McGrath recounts Plaintiff's testimony that he was kicked directly in the face by Defendant Barnaby, thrown into a van, and "slapped around a little bit" by officers while being processed in

5

the SHU. *See id.* at 9-10. Defendant McGrath argues that Plaintiff's inability to identify the source of his injuries forced the jury to "guess" which physical injuries were attributable to Defendant McGrath. *See id.* at 11. Plaintiff responds that he presented sufficient credible evidence to demonstrate that Defendant McGrath proximately caused his injuries and points to numerous examples of evidence admitted at trial which satisfy this element. *See* Dkt. No. 164 at 8-10.

As detailed above, Plaintiff testified that he was stopped by Defendant McGrath to be pat frisked on his way to his educational programming. *See* Dkt. No. 166 at 20-21. During the pat frisk, Defendant McGrath began asking Plaintiff about what was happening in Plaintiff's dorm, F2, and called him a "hotshot." *See id.* at 22. Plaintiff indicated that he did not know what Defendant McGrath was talking about. *See id.* Defendant McGrath, while patting Plaintiff's ankle area, then asked Plaintiff why he was carrying a weapon. *See id.* Plaintiff responded that he was not carrying a weapon. *See id.* Defendant McGrath then pulled Plaintiff's ankles out from under him, causing him to fall towards the floor. *See id.* Plaintiff testified that he attempted to put his hands up to prevent his face from hitting the floor and that he struck a nearby radiator during his fall. *See id.* at 24, 107. Defendant McGrath then climbed onto Plaintiff's back and began punching him on the right side of his head and body until Plaintiff almost lost consciousness. *See id.* at 24. Plaintiff characterized the punches as "heavy" and believes that he was punched at least forty times. *See id.* at 25, 90. Medical records demonstrate that Plaintiff sustained the following injuries:

> [R]ight facial/cheek area swelling and bruising up into ear, auricle discolored, purple and swollen. Red mark to mid-forehead, left facial cheek bruising and swelling. Back of left ear, red marks and superficial scratch. Red marks to neck, check and left upper arm. Right knee small abrasion; back of right hand, quarter-inch superficial cuts times two. Inmate denies loss of consciousness.

6

Dkt. No. 166 at 145. Another report completed on January 28, 2016, at approximately 9:30 a.m. describes Plaintiff's injuries in the following manner:

> Right facial cheek extending up to ear, red and bruised. Swelling positive, purple discoloration to right ear auricle with swelling. Red mark to midforehead; left facial cheek bruising and swelling. Back of left ear, red marks and superficial scratch. Red marks noted to left neck, check and left upper arm. Right knee, small abrasion. Back of right hand, quarter-inch superficial cuts times two. Right chest wall, red mark positive.

Dkt. No. 166 at 148.

  Defendant McGrath's argument that the evidence was insufficient for a reasonable jury to distinguish between the injuries caused by Defendant McGrath and any injuries Plaintiff sustained at the hands of other corrections officers is unavailing. With respect to Defendant Barnaby, Plaintiff testified that he was kicked on the left side of his face. *See* Dkt. No. 166 at 27-28. Plaintiff specifically testified that all of the injuries he sustained during the altercation with Defendant McGrath were on the right side of his body. *See id.* at 28.

  Defendant McGrath's argument regarding the alleged altercation between Plaintiff and corrections staff during his intake at the SHU is similarly unpersuasive. There was testimony about the extent of the physical force used by the corrections staff in SHU. Plaintiff characterized those interactions as being "grabbed" and "slapped around a little bit." *See id.* at 33. When asked to describe the force used in the SHU, Plaintiff testified that he was "slapped and pushed and grabbed by [his] throat." *See id.* at 34. Plaintiff's counsel asked Plaintiff to describe the difference between the force used in the SHU and the force used during the altercation with Defendant McGrath. *See id.* at 121. In response, Plaintiff described the force used in the SHU as "love taps" and "light slaps," whereas the force used by Defendant McGrath was described as an "assault" showing "little restraint." *See id.* at 121-22. The trial proof – which included extensive

7

testimony, medical records, and incident reports – was more than sufficient for a rational jury to find that Defendant McGrath proximately caused Plaintiff's injuries.

Additionally, the Court notes that Defendant McGrath's argument on this point seems to be premised on the assumption that the jury had to believe all of Plaintiff's testimony, including his testimony that he was assaulted by staff in the SHU. However, the jury is free to believe as little or as much of a witness' testimony as they deem appropriate. *See Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) (citations omitted) (noting that in ruling on a motion for judgment as a matter of law, "the court must bear in mind that the jury is free to believe part and disbelieve part of any witness's testimony"). As the finders of fact, that is the jury's prerogative. Here, they credited at least part of Plaintiff's testimony and found that Defendant McGrath proximately caused Plaintiff's injuries. *See* Dkt. No. 131 at 2. The evidence, as set forth above, was more than sufficient for the jury to reach such a conclusion.

### 3. Emotional Injury

As an alternative argument, Defendant McGrath argues that the evidence regarding Plaintiff's emotional injuries was insufficient to support a finding of proximate cause. *See* Dkt. No. 159-1 at 12. Initially, for all of the reasons described above, the jury had sufficient evidence to find that Defendant McGrath proximately caused Plaintiff's physical injuries. Thus, the jury was not required to address emotional injury. Additionally, the verdict form did not ask the jury to distinguish between physical and emotional injuries, nor did Defendant McGrath request such a distinction. *See* Dkt. Nos. 88, 131. The Court will not attempt to guess the extent to which the jury relied on Plaintiff's physical and/or emotional injuries in reaching their verdict. Because the record contained sufficient evidence for the jury to determine proximate cause, the Court need not determine the extent to which the jury relied upon Plaintiff's testimony as to emotional damages.

However, even if the Court were to examine the sufficiency of the evidence as to emotional damages, Defendant McGrath's argument would still fail. Plaintiff described the altercation with Defendant McGrath, explained that he feared for his life and believed he was going to die, has since experienced difficulty sleeping and recurring thoughts about the incident, and provided photographs and medical records which demonstrate the severity of the injuries that he sustained. *See* Dkt. No. 166 at 25, 53, 145-48. All of this evidence, in conjunction with consideration of the objective circumstances of the violation itself, was sufficient for the jury to find that Defendant McGrath proximately caused Plaintiff's emotional injuries. *See Waltz v. Town of Smithtown*, 46 F.3d 162, 170 (2d Cir. 1995). Accordingly, Defendant McGrath's motion for judgment as a matter of law is denied.

**B.     Motion for a New Trial**

*1. Legal Standard*

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (quotation marks and citation omitted). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *Id.*

Under Rule 59(a), "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *Id.* In considering a motion for a new trial, the court is free to weigh the evidence independently and need not view it in the light

9

most favorable to the verdict winner. *See Manley v. Ambase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003). The standard for granting such a motion is high and rulings on motions under Rule 59(a) "are committed to the sound discretion of the district court." *Severino v. Am. Airlines*, No. 07 CV 941, 2009 WL 1810014, *2 (S.D.N.Y. June 24, 2009) (quoting, *inter alia, Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998)). "While a jury's credibility assessments are entitled to deference, these principles of deference to the jury do not override the trial judge's duty to see that there is no miscarriage of justice." *Livingston v. Escrow*, No. 08–CV–6576, 2014 WL 1466469, *2 (W.D.N.Y. Apr. 15, 2104) (citations omitted). "The Second Circuit has instructed district courts to 'abstain from interfering with [a jury] verdict unless it is quite clear that the jury has reached a seriously erroneous result' that would result in 'a miscarriage of justice.'" *Fioto v. Manhattan Woods Golf Enter., LLC.*, 304 F. Supp. 2d 541, 545-46 (S.D.N.Y. 2004) (citing *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978)). "'Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite of the apple.'" *Carlson v. Parry*, No. 06-CV-6621P, 2013 WL 5354517, *5 (W.D.N.Y. Sept. 24, 2013) (quoting *Kogut v. Cnty. of Nassau*, No. 06-CV-6695, 2013 WL 3820826, *2 (E.D.N.Y. July 22, 2013)).

### 2. Compensatory Damages

Defendant McGrath first argues that the compensatory damages award should be vacated because Plaintiff failed to establish that Defendant McGrath proximately caused his injuries. *See* Dkt. No. 159-1 at 13. For the reasons discussed above, the Court finds that Plaintiff presented sufficient evidence upon which the jury could base their compensatory damage award.

Alternatively, Defendant McGrath argues that the compensatory damages award is excessive and should be vacated or reduced. *See* Dkt. No. 159-1 at 13. Defendant McGrath

describes Plaintiff's injuries as "*de minimis*." *See id.* at 14. The Court disagrees. The trial proof demonstrated that Plaintiff sustained a number of injuries of varying severity. Plaintiff presented evidence of a number of scratches, bruises, and swelling on his face, ears, hands, and torso. *See* Dkt. No. 166 at 145-48. Additionally, Plaintiff sustained a broken rib and there was evidence to suggest that Plaintiff may have sustained a concussion. *Id.* at 70, 148. This evidence is sufficient for the jury to conclude that Plaintiff's injuries were more than *de minimis*.[1] Finally, Defendant McGrath argues that even if Plaintiff's injuries are not *de minimis*, an award of $190,000 is excessive when compared to other damages awards in similar cases. *See* Dkt. No. 159-1 at 14.

"'While it is properly within the province of the jury to calculate damages, there is an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable persons may differ, but a question of law.'" *Rosas v. Balter Sales Co. Inc.*, No. 12-CV-6557, 2018 WL 3199253, *8 (S.D.N.Y. June 29, 2018) (quoting *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 327-28 (S.D.N.Y. 2016)). "'A jury has broad discretion in measuring damages, but it may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket.'" *Id.* (quoting *Bouveng*, 175 F. Supp. 3d at 327-28). "'Importantly, in calculating the remittitur, the court must use the least intrusive—and most faithful to the jury's verdict—method of reducing the verdict only to the maximum that would be upheld by the trial court as not excessive.'" *Id.* (quoting *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 559-60 (S.D.N.Y. 2012)). "To determine whether an award is so high

---

[1] This finding is consistent with case law in this Circuit in similar cases. *See Chen v. Cnty. of Suffolk*, 927 F. Supp. 2d 58, 67-68 (E.D.N.Y. 2013) (rejecting the defendant's argument that the plaintiff's injuries were *de minimis* where the plaintiff experienced pain for a couple of weeks following the incident and medical records indicated that the plaintiff had abrasions on her face, left arm and leg, wrists and hands, and bruising on her upper arms and knees). Plaintiff's injuries are more significant than cases where injuries were deemed *de minimis*. *See Kerman v. City of*

11

as to 'shock the judicial conscience,' courts may 'consider[ ] ... the amounts awarded in other, comparable cases.'" *Id.* (quoting *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003)).  "A court should determine whether the award is 'within [a] reasonable range,' not just 'balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater.'" *Id.* (quoting *Ismail v. Cohen*, 899 F.2d 186, 187 (2d Cir. 1990)).

Compensatory damages awards for excessive force claims in this Circuit vary greatly. However, the Court finds that the compensatory damages award here is within the reasonable range based on comparable cases. *See Morales v. City of N.Y.*, No. 99 Civ. 10004, 2001 WL 8594, *10 (S.D.N.Y. Jan. 2, 2001) (citing *Blisset v. Coughlin*, 66 F.3d 531 (2d Cir. 1995); *Rodney v. City of Schenectady*, 1 F.3d 1341 (2d Cir. 1993); *Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986); *Wheatly v. Ford*, 679 F.2d 1037 (2d Cir. 1982); *King v. City of N.Y.*, No. 92 Civ. 7738, 1996 WL 737195 (S.D.N.Y. Dec. 24, 1996)) (noting that cases where the plaintiffs sustained beatings but suffered no permanent injuries, injury awards ranged from $25,000 to $200,000); *DiSorbo*, 343 F.3d at 185-86 (reducing compensatory damages award from $400,000 to $250,000 where the injuries included two large hemotomas and bruises all over her body and did not require surgery or result in permanent scarring or nerve damage, and sustained psychological injuries caused by the "highly traumatic nature" of the attack); *Alla v. Verkay*, 979 F. Supp. 2d 349, 363-65, 377 (E.D.N.Y. 2013) (upholding an award of $250,000 in non-economic compensatory damages where the plaintiff sustained a fractured facial bone which caused chronic headaches, limited jaw function, recurring nightmares, and emotional injuries); *Bender v. City of N.Y.*, 78 F.3d 787, 792-95 (2d Cir. 1996) (remitting award of $300,000 to $150,000 where the plaintiff did not sustain a permanent physical injury but suffered nightmares and loss of sleep for

---

*N.Y.*, 374 F.3d 93, 123 (2d Cir. 2004) (finding that the plaintiff's soreness in his back and neck

more than a year, mostly resulting from being wrongfully confined for one day); *King*, 1996 WL 737195, at *4, 6 (remitting compensatory damage award to $200,00 where the plaintiff suffered no permanent injuries but received bruises, black eyes, abrasions, a gash in his head, and other blunt trauma); *Rosas*, 2018 WL 3199253, at *9-10 (reducing compensatory damages award to $180,000 for "garden variety" emotional distress).

The Court has previously described the physical injuries that Plaintiff sustained as a result of the attack. Additionally, although Plaintiff did not suffer a long-term injury or lasting impairment, he testified that his rib injury took a couple of months to heal. *See* Dkt. No. 166 at 49. Additionally, the record includes evidence that Plaintiff sustained psychological injuries. Plaintiff testified that following the attack he experienced, and continues to experience, difficulty sleeping and recurring thoughts about the incident. *See id.* at 25, 53-54, 145-48. This evidence, in conjunction with the objective evidence of the assault, is sufficient for the jury to reach its damage calculation. *See Miner v. City of Glens Falls*, 999 F.2d 655, 663 (2d Cir. 1993).

Defendant McGrath also argues that the damages award must be vacated or reduced to the extent that it relies on Plaintiff's emotional injury. *See* Dkt. No. 159-1 at 16. However, for the reasons the Court discussed above, this argument is unpersuasive. First, the jury did not differentiate between Plaintiff's physical and psychological injuries, and therefore, any attempt by the Court to do so would be speculative. Second, Plaintiff's testimony regarding his emotional injuries, the evidence of the nature of the altercation, and photographic and medical records of Plaintiff's injuries are sufficient for the jury to find that Defendant McGrath proximately caused Plaintiff's emotional injuries.

---

and emotional injuries were *de minimis*).

Accordingly, the Court finds that the jury's compensatory damages award of $190,000 does not shock the conscious. Thus, Defendant McGrath's motion to vacate or reduce the compensatory damages award is denied.

### 3. Punitive Damages

"As with compensatory damages, ... review of punitive damages awarded under § 1983 considers 'whether the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *DiSorbo*, 343 F.3d at 186 (quoting *Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997)) (quotations omitted). "The Supreme Court in *Gore* identified three 'guideposts' for determining whether a punitive damages award is excessive: 1) the degree of reprehensibility; 2) the disparity between the harm or potential harm and the punitive damages award; and 3) the difference between the remedy and the civil penalties authorized or imposed in comparable cases." *Id.* (citing *BMW of North America v. Gore*, 517 U.S. at 574-75).

Defendant McGrath argues that the jury's punitive damages award of $50,000 is constitutionally excessive to the extent that it relies on speculation in determining proximate causation and considers Plaintiff's testimony regarding his emotional injuries. *See* Dkt. No. 159-1 at 18-19. Although Defendant McGrath cites the *Gore* factors, he does not make any arguments with respect to the factors. Rather, Defendant McGrath relies upon the same arguments he made regarding the proximate cause finding and demonstration of emotional injuries. *See id.* Additionally, the evidence indicated that Defendant McGrath was potentially motivated to viciously beat Plaintiff because Plaintiff had intimate interactions with Defendant McGrath's girlfriend. *See* Dkt. No. 166 at 5-9. Finally, the evidence suggested that Defendant McGrath not only assaulted Plaintiff but planted a weapon on him. *See id.* at 44; Dkt. No. 167 at 379-80. For these reasons, and the others that the Court has discussed in detail above, the evidence was

sufficient for the jury to find that Defendant McGrath proximately caused Plaintiff's injuries and that Plaintiff suffered emotional injuries. Accordingly, Defendant McGrath's motion to vacate or reduce the punitive damages award is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above stated reasons, the Court hereby

**ORDERS** that Defendant McGrath's renewed motion for judgment as a matter of law or, in the alternative, for a new trial, pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure (Dkt. No. 159) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 23, 2021
Albany, New York

Mae A. D'Agostino
U.S. District Judge